**MODERN HEATING AND
AIR CONDITIONING,
INC., Appellant,**

v.

**LOOP BELDEN PORTER, Respondent.**

**No. C3–92–922.**

Court of Appeals of Minnesota.

Dec. 8, 1992.

Thomas H. Boyd, Winthrop & Weinstine, P.A., St. Paul, for appellant.

Peter A. Koller, Paul T. Eidsness, Moss & Barnett, P.A., Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

DAVIES, Judge.

Appellant challenges the trial court's sua sponte grant of summary judgment in favor of respondent based on a mutual release. We reverse and remand.

## FACTS

From 1983 to June 2, 1989, Douglas Hayes owned 100% of respondent company Loop Belden Porter ("Loop") and 51% of appellant company Modern Heating and Air Conditioning ("Modern Heating"). While under Hayes' ownership, Loop and Modern Heating obtained various forms of combined insurance, including the workers' compensation policy of concern here, a policy which qualified its purchaser to receive dividends. The parties to this action each paid a pro rata share of premiums due on the policy. The policy, obtained under the CNA Insurance Company's Plumbing Heating and Air Conditioning Trade ("PHACT") group dividend policy program, was written for the policy period September 1987 through August 1988.

Hayes sold his share of ownership in Modern Heating on June 2, 1989. As part of the winding-up process, Modern Heating and Loop executed a "joint project agreement" which set out their agreement to share *premiums returned* to the parties under the PHACT and other common policies. The agreement did not explicitly mention dividends, as distinct from refunds. That same day, the parties also executed a mutual release which exempted from its reach "items controlled by the joint project agreement."

In late July 1989, CNA issued a dividend which was earned on the September 1987 through August 1988 workers' compensation policy. CNA sent the full dividend directly to Loop because Loop was the first named insured on the policy. Loop refused to forward to Modern Heating a pro rata share of the dividend, claiming that Modern Heating had agreed not to participate in dividends under the policy.

Modern Heating initiated this suit to recover a pro rata share of the dividend, denying that it waived its right to share in dividends issued under the PHACT policy and claiming that the joint project agreement supported its right to the dividend. On February 28, 1992, Modern Heating moved for summary judgment.

Loop obtained an order from the district court on March 12, allowing it to amend its answer to assert the mutual release as an affirmative defense. At a hearing just two weeks later, on March 27, Loop invited the district court to enter summary judgment against Modern Heating sua sponte, based on the release. The district court denied Modern Heating's motion for summary judgment and, instead, entered summary judgment in favor of Loop based on the release. At no time did Loop move the court for summary judgment on its own behalf.

## ISSUES

I. Did the district court err in granting summary judgment sua sponte against Modern Heating based on the release?

II. Did the district court err in deciding as a matter of law that the parties' joint project agreement did not provide Modern Heating with a right to recover a pro rata share of the PHACT dividend?

III. Did the district court err in implicitly deciding that the parties did not have an implied agreement to provide Modern Heating with a pro rata share of the PHACT dividend?

## ANALYSIS

I. Summary Judgment on Release

Modern Heating claims that questions of material fact preclude summary judgment in favor of Loop, despite Modern Heating's own motion for summary judgment.

■ a. Minn.R.Civ.P. 56.03 provides that a summary judgment motion shall be served at least ten days before the time fixed for the hearing and that the adverse party may serve opposing affidavits. Unless waived by the party opposing summary judgment, the notice requirement in Rule 56.03 is mandatory. *Del Hayes &*

*Sons, Inc. v. Mitchell,* 304 Minn. 275, 278–79, 230 N.W.2d 588, 591 (1975) (citing *McAllister v. Independent Sch. Dist. No. 306,* 276 Minn. 549, 550, 149 N.W.2d 81, 82 (1967)).

■ A trial court has inherent authority, however, to grant summary judgment sua sponte without notice to either party where there remains no genuine issue of material fact, one of the parties deserves judgment as a matter of law, and the absence of a formal motion *creates no prejudice* to the party against whom summary judgment is entered. *Id.* at 280–81, 230 N.W.2d at 591–92.

Similarly, in cases where the moving party did not meet the notice requirements of Rule 56.03, this court has considered whether the party against whom summary judgment was entered had a meaningful opportunity to oppose the grant of summary judgment. *Wikert v. Northern Sand & Gravel,* 402 N.W.2d 178, 182 (Minn.App.1987), *pet. for rev. denied* (Minn. May 18, 1987); *see also Federal Land Bank v. Obermoller,* 429 N.W.2d 251, 255 (Minn.App.1988) (the record indicated that mortgagors received sufficient notice and were afforded adequate opportunity to defend against summary judgment), *pet. for rev. denied* (Minn. Oct. 26, 1988).

This court, thus, must determine whether the district court's sua sponte action prejudiced Modern Heating.

■ Modern Heating first sought summary judgment for itself, claiming a right to share dividends under the joint project agreement and under an implied contract. It also claimed that no consideration existed for any waiver of its right to the dividend if waiver were asserted.[1] These were

the three arguments raised in Modern Heating's summary judgment motion.

■ Prior to Modern Heating's motion for summary judgment, Loop had moved to amend its answer to include the mutual release as an affirmative defense. The district court did not grant Loop's motion to amend its pleadings until March 12, 1992.[2] The hearing on the summary judgment motion occurred on March 27, only 15 days later.

We believe, given the complexity of this issue, that Modern Heating could not be expected to have at its fingertips, after just 15 days, evidence to oppose assertion of the alleged mutual release as a bar to its claim. Yet it was confronted with the threat of summary judgment on that issue at day 15 without benefit of the warning provided by the notice requirement in Rule 56.03.

Moreover, the district court gave Modern Heating no opportunity to show that genuine issues of material fact actually existed on the question of the release. Modern Heating asserts that when it attempted to make an offer of proof on this disputed issue, the district court denied it the opportunity, claiming it was unnecessary.

Given Modern Heating's lack of a meaningful opportunity to respond with appropriate affidavits contradicting Loop's evidence of the mutual release, we hold that Modern Heating was prejudiced by the district court's premature grant of summary judgment on the release issue.

■ b. Modern Heating also claims the district court erroneously concluded that the mutual release barred Modern Heating from a claim against Loop for dividends issued under the PHACT program. Modern Heating argues that the mutual release is limited to claims existing prior to June 2,

1. The trial court concluded that adequate consideration existed for an alleged waiver of Modern Heating's right to the dividend. The trial court's finding on this issue is irrelevant, since it failed to make a finding that a waiver actually occurred. Generally, the existence of a waiver is a question for the fact-finder and, thus, an inappropriate subject for summary judgment on contested facts. *See Engstrom v. Farmers & Bankers Life Ins. Co.,* 230 Minn. 308, 312, 41 N.W.2d 422, 424 (1950).

2. We are confused by Loop's claim that its motion to amend its answer was still pending at the time the court granted summary judgment in its favor. The record indicates otherwise. If Loop's claim were true, it would give further cause to believe that Modern Heating had a legitimate reason for not being prepared at the summary judgment hearing to argue an issue not yet raised by the pleadings.

1989, and does not apply to a claim for dividends issued after that date.

Apparently, the parties intended that the mutual release, together with the joint project agreement, would adjust all obligations between them. The parties to the release agreed:

> The Parties of the First Part [Modern Heating and Tegodo Properties] do hereby release the Parties of the Second Part [Hayes and Loop] * * * from any and all debts, claims, demands, damages, actions, causes of action, suits, controversies, agreements, promises, judgments, execution and liability whatsoever * * * *which the Parties of the First Part may now have against the Parties of the Second Part, or ever have, or hereafter can, shall or may have, by, upon or by reason of any matter, cause or thing whatsoever, at any time prior to the date of this Agreement* [June 2, 1989].

(Emphasis added.) The language of the release is ambiguous and contradictory because it refers to actions the party has or may have in the future, yet limits the release to "any matter, cause or thing whatsoever, at any time prior to the date of this Agreement."

Modern Heating argues that the release does not bar its claim for the dividend because the dividend was not issued to Loop until after the date of the release. We are tempted to concur with Modern Heating's contention as a matter of law, especially as we contemplate the following question: If CNA had sent the check to Modern Heating, instead of Loop, would Modern Heating then be able to assert the mutual release as a bar to a claim by Loop? We think not. And, if the release would not bar a Loop claim, why should it bar the Modern Hearing claim?

But interpretation of the release because of its ambiguity remains a question for the fact-finder, not for this court nor for the district court, which improperly decided the question as a matter of law. *Blackburn, Nickels & Smith, Inc. v. Erickson*, 366 N.W.2d 640, 643 (Minn.App.1985), *pet. for rev. denied* (Minn. June 24, 1985).

Although the joint project agreement and the mutual release are written as if they dispose of all remaining obligations between the parties, that may not be the case. A third alternative is that the parties by oversight failed in the release to provide for uncontemplated obligations, such as the dividend unexpectedly issued under the PHACT program. Thus, a fact issue exists as to whether the parties treated this dividend in the mutual release.

## II. Joint Project Agreement

■ Modern Heating asserts the trial court also erred by interpreting the joint project agreement as not providing Modern Heating with a basis to claim part of the PHACT dividend.

The joint project agreement arose out of the parties' desire "to establish a method for handling the completion of their existing joint projects" after Hayes' sale of his interest in Modern Heating. The agreement provides that "the subjects addressed in this Agreement are intended to be exceptions from the Mutual Release." With respect to their joint insurance policies, the parties agreed:

> Modern [Heating] and Loop shall be eligible for any *refunds of insurance premiums* paid, or liable for additional insurance premiums due, *if and when so determined by insurance company audit* regarding the various types of insurance heretofore carried by Modern [Heating] and Loop in a common policy or policies.

(Emphasis added.)

Modern Heating argues that the dividend received by Loop was a "return of insurance premium" under the joint project agreement. However, in its July 21, 1989, letter announcing the dividend, CNA stated:

> [Y]our Business Insurance Program * * * is successfully returning a dividend to *you*.
>
> The PHACT dividend * * * represents a 9.9% return on your earned premium from 9-1-87 to 8-31-88.

All evidence indicates that the PHACT program is a profit-sharing program in which dividends—not premiums—are issued by the insurance company, based not

on an audit of the insured, but on the program's profitability.

█ Modern Heating contends, in the alternative, that the joint project agreement's language is ambiguous. Whether the terms of a contract are ambiguous is a question of law for the court. *Employers Liab. Assurance Corp. v. Morse*, 261 Minn. 259, 263, 111 N.W.2d 620, 624 (1961). A contract is ambiguous if it is *reasonably* susceptible to more than one interpretation. *Id.* at 264, 111 N.W.2d at 624.

Modern Heating suggests that the parties intended the language at issue to mean *any return of sums based on premiums paid* by the insureds to the PHACT policy as determined by an *audit of the entire PHACT program* (i.e., to determine its profitability).

Modern Heating's interpretation takes relevant terms out of context. PHACT dividends are based on the profitability of the entire PHACT program. Thus, a "refund (or return) of premium" would not include the dividend at issue in this case. And even if Modern Heating's interpretation is reasonable and the agreement is ambiguous, resort to extrinsic evidence, through affidavits of the sales agents, conclusively supports Loop's interpretation of the agreement, making the district court's legal conclusion appropriate. Modern Heating, having put this issue before the court by its motion for summary judgment, provided no evidence to contradict Loop's affidavits.

The district court correctly concluded that the joint project agreement did not address Modern Heating's right to dividends, in contrast with premium refunds.

### III. Implied Contract

Modern Heating argues next that the district court erred by failing to address its implied contract claim. Modern Heating claims the parties impliedly agreed that Modern Heating would receive a pro rata share of any dividends issued by CNA under Modern Heating and Loop's combined policy. Modern Heating argues that this contract was evidenced both orally and by the parties' conduct.

█ The existence and terms of an implied contract are issues for the trier of fact. *Bergstedt, Wahlberg, Berquist Assocs., Inc. v. Rothchild*, 302 Minn. 476, 479–80, 225 N.W.2d 261, 263 (1975). Summary judgment, therefore, is not appropriate on these issues. Where the terms of a contract are at issue, the trial court should give the parties a full opportunity to present evidence of facts, circumstances, and conditions surrounding its execution to clarify or explain the terms. *Donnay v. Boulware*, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966).

█ The affidavits and depositions support Modern Heating's contention on appeal that genuine issues of material fact exist regarding the terms of the parties' agreement to purchase combined insurance under the PHACT program. In support of its claim, Modern Heating points to the fact that the parties paid their share of premiums on a pro rata basis. Modern Heating also asserts that in the past the parties shared dividends arising from other combined insurance policies on a pro rata basis. While these other dividends can be distinguished from the PHACT dividends, they provide some evidence of intent to share in *all aspects* of an insurance policy on a pro rata basis.

In granting summary judgment for Loop the district court concluded that Modern Heating, by virtue of the mutual release, had no right to future dividends declared under the PHACT policy program. Consequently, the district court did not reach Modern Heating's claim that an implied contract existed. We want to make clear that Modern Heating is entitled to review of its implied contract claim if it successfully defeats summary judgment upon reconsideration of the release issue (after proper notice) on remand.

### DECISION

Because the district court did not afford Modern Heating a meaningful opportunity to oppose the sua sponte grant of summary judgment in favor of Loop, we reverse and remand to the district court. We hold that

the district court properly interpreted the joint project agreement but must reconsider the intentions of the parties with respect to dividends issued under the PHACT program, both in executing the release and in making the original agreement for purchase of joint workers' compensation insurance.

Reversed and remanded.