**FISCHER SAND AND AGGREGATE CO., et al., Plaintiff,**

v.

**CITY OF LAKEVILLE, a municipal corporation; Mayor Duane Zaun et al., Defendants.**

Civ. No. 3–94–277.

United States District Court,
D. Minnesota,
Third Division.

July 8, 1994.

Gerald S. Duffy, Anthony J. Gleekel, Sherri L. Rohlf, Siegel, Brill, Greupner & Duffy, P.A., Minneapolis, MN, for plaintiffs.

John M. Baker, Clifford M. Greene and Russell Adam Blanck, Greene Espel, Minneapolis, MN, for defendants.

**MEMORANDUM AND ORDER**

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendants' motion for summary judgment. For the following reasons, the Court grants the motion.

## BACKGROUND

Plaintiffs Fischer Sand and Aggregate Company and related entities (Plaintiffs) sought permits to open a gravel mine in Apple Valley, Minnesota, from the City of Apple Valley and other government bodies with jurisdiction. In order to open the mine, Plaintiffs were required to obtain new zoning designation for their property and variances or affirmative permission from several other agencies. Officials from the adjacent City of Lakeville actively opposed the gravel mine in rezoning and permit proceedings before the Apple Valley City Council, the Metropolitan Council, the Minnesota Environmental Quality Board and other state and local agencies that either reviewed or had input to decisions regarding Plaintiffs' application. Plaintiffs' application eventually received all the necessary zoning changes and permits. Approximately one month after receiving final approval to open and operate their gravel mine, Plaintiffs filed this suit against the City of Lakeville, its mayor and city council members (hereinafter collectively described as "Defendants"), alleging Defendants had improperly and illegally interfered with Plaintiffs' efforts to obtain the permits and zoning variances necessary to open and operate the gravel mine. Plaintiffs' claims against the Defendants include interference with contractual relations and prospective economic advantage, denial of due process and equal protection, and "ultra vires" actions exceeding the scope of the City of Lakeville's police power. They seek damages and an injunction against further interference by Lakeville and its officials.

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992). To determine whether genuine issues of material fact exist, a court conducts a two-part inquiry. The court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts which might affect the outcome of the lawsuit according to applicable substantive law are material. *Id.* A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49, 106 S.Ct. at 2510–11.

In the present case, Defendants assert that their actions were protected First Amendment petitioning activity and therefore Plaintiffs' claims based on that activity are barred by the *Noerr–Pennington* doctrine. Cases decided after the Supreme Court's controlling decision in *Professional Real Estate v. Columbia Pictures,* —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), have demonstrated that, in order to survive summary judgment on claims within the *Noerr–Pennington* privilege, the non-movant must provide evidence sufficient to present a genuine issue regarding whether the movant's claims and opposition were "so baseless that no reasonable [petitioner] could realistically expect to secure favorable relief." *Carroll Touch v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573, 1583 414 (Fed.Cir. 1993) (quoting *Columbia Pictures,* —— U.S. at ——, 113 S.Ct. at 1929); *see Computer Assoc. Int'l, Inc. v. American Fundware, Inc.,* 831 F.Supp. 1516 (D.Colo.1993); *Edmondson & Gallagher v. Alban Towers Tenants Assn.,* 829 F.Supp. 420 (D.D.C. 1993).

Defendants contend that their activities in opposition to Plaintiffs' application are protected by the First Amendment to the United States Constitution under the "*Noerr–Pennington* doctrine" and thus Defendants' claims are barred. The *Noerr–Pennington* doctrine protects the right of citizens to "petition the Government for redress of grievances," U.S. Const.amend. I, by immunizing persons from liability for injuries allegedly caused by their activities and participation in public processes with the intent of influencing public policy decisions. *See Eastern R. Pres. Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *California Motor Transp. Co. v. Trucking Unltd.,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).

Although the *Noerr–Pennington* doctrine arose in the antitrust context, lower court cases have established that it applies in other areas of substantive law, including tortious interference with contractual and prospective business relations and Section 1983 claims. *See State of S.D. v. Kansas City Southern Ind.*, 880 F.2d 40 (8th Cir.1989) and cases cited therein; *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614–15 (8th Cir. 1980); *Missouri v. National Organization for Women*, 620 F.2d 1301, 1316–19 (8th Cir. 1980); *see also Computer Assoc. Int'l*, 831 F.Supp. at 1522 (*Noerr–Pennington* doctrine "bars litigation arising from injuries received as a consequence of First Amendment petitioning activity, regardless of the underlying cause of action asserted ...").[1]

■ The fact that Defendants are government officials and acted in their official capacity does not deprive them of the protection of the *Noerr–Pennington* doctrine. In fact, it is more likely that such government defendants act with the intent of advancing the public interest in exercising their First Amendment rights than private petitioners; this buttresses the justification for clothing the Defendants with immunity from suit arising from their petitioning activities. *See Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492, 501, 108 S.Ct. 1931, 1937, 100 L.Ed.2d 497 (1988). In any event, the Court finds no reason that public officials and municipalities should receive any less protection under *Noerr–Pennington* than private petitioners and thus concludes that all Defendants, including the City of Lakeville, fall within the scope of the *Noerr–Pennington* doctrine. *See Id.; County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1387, 1390 (E.D.N.Y.1989) and cases cited therein, *aff'd*, 907 F.2d 1295 (2d Cir.1990).

■ Petitioning activity otherwise protected by the First Amendment may fall outside the *Noerr–Pennington* shield if such conduct constitutes "sham" activity.[2] *See Eastern R. Pres. Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The Supreme Court recently clarified the parameters of this narrow exception to the *Noerr–Pennington* doctrine. In order to show that conduct falls within the exception to the doctrine and thus is outside *Noerr–Pennington* protection, a party must show:

1. A defendant's activity is "objectively baseless in the sense that no reasonable [petitioner] could realistically expect success on the merits"; and

2. That defendant's activity is subjectively motivated by bad faith.

*Columbia Pictures,* —— U.S. at ——–——, 113 S.Ct. at 1928–29.[3] A court may proceed to the second step and examine the subjective motivation of the litigant *only* if it first

---

1. The Court cannot discern from the Plaintiffs' Complaint or arguments the legal theory of Count Three of the Complaint, labelled "Ultra Vires." The statute under which Plaintiffs purport to bring that claim only sets forth the zoning powers of municipalities. *See* Minn.Stat. § 462.357. It does not provide for citizen suits for damages or injunctive relief against municipalities that allegedly exceed their authority or act outside their jurisdiction under the statute. *See Id.* In addition, Minn.Stat. § 473.175 expressly provides authority for participation of neighboring municipalities in amendment of comprehensive zoning plans. The Court concludes that Count Three fails to state a claim on which relief could be granted and Defendants would be entitled to judgment as a matter of law on that Count regardless of whether *Noerr–Pennington* immunity extends to allegedly ultra vires acts of municipalities and their officers.

2. At least one Circuit Court of Appeals has held that, in order to show defendants' activities fall within the sham exception, plaintiffs must set forth facts supporting such exception in their Complaint. *See Franchise Realty Interstate Corp.*
*v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082 (9th Cir. 1976). Plaintiffs made no such allegations in their Complaint. Although this Court agrees with the theory underlying the rule enunciated in *Franchise Realty*, it is not clear that the Eighth Circuit has or would adopt such a rule. Therefore, the Court will discuss the merits of the Plaintiffs' sham exception argument raised in its memorandum.

3. Although *Columbia Pictures* involved litigation rather than activity directed at influencing the decision of executive and legislative bodies, the *Noerr–Pennington* doctrine had its genesis in the context of efforts to influence legislative and executive branch decisions. *See Noerr*, 365 U.S. at 136–37, 81 S.Ct. at 528–29. *Noerr* also announced the "sham" exception in the context of acts allegedly intended to influence executive and legislative decisions. *Columbia Pictures* is simply the most recent in a series of decisions clarifying the scope of the sham exception. There is no reason to believe the test enunciated there does not apply equally to conduct allegedly in-

finds the challenged conduct is "objectively meritless" *Id.* at 1928. It is important to note the difficult task faced by a litigant seeking to show its opponent's actions fit the exception to the *Noerr–Pennington* doctrine. Here, the Plaintiffs bear the heavy burden of showing that Defendants' opposition to Plaintiffs gravel mine was objectively *meritless.* As the Supreme Court noted in applying the doctrine to litigation, "even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit" *Id.* at ——, 113 S.Ct. at 1928 n. 5.

Although reasonable people could disagree about the strength of Defendants' position in opposing Plaintiffs' proposed gravel mine, the Court finds Plaintiffs have fallen far short of creating a genuine issue of fact on the question of whether the Plaintiffs' claims were objectively meritless. Of course, the mere fact that Defendants did not prevail in their opposition does not make that opposition objectively meritless. *See Id.* Defendants provided input to a public planning process in a manner allowed by state statute. The concerns about environmental consequences presented by Defendants were not so remote or unlikely as to make them frivolous or objectively without merit. *See Liberty Lake Investments Inc. v. Magnuson,* 12 F.3d 155, 158 (9th Cir.1993) (*possibility* of environmental harm is all that is required to provide objective basis for lawsuit; probability of such harm *not* necessary).

Plaintiffs seek to avoid the first prong of the *Columbia Pictures* test by alleging that Defendants allegations and arguments contained misrepresentations and therefore Defendants' actions should be excepted from *Noerr–Pennington* protection. Even assuming, *arguendo,* that Defendants made factual exaggerations or even misrepresentations in their opposition, their conduct would still be entitled to First Amendment protection unless the misrepresentations were made to a government (legislative, executive or judicial) body. *Liberty Lake Investments, Inc. v.*

*Magnuson,* 12 F.3d at 158–59; *see Columbia Pictures,* —— U.S. at ——, n. 6, 113 S.Ct. at 1929, n. 6 (declining to decide whether fraud or misrepresentation constitutes exception to *Noerr–Pennington;* context suggested the question reserved was that of effect of fraud on court or administrative body); *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 176–77, 179–80, 86 S.Ct. 347, 349–50, 351–52, 15 L.Ed.2d 247 (1965). Nowhere do Plaintiffs clearly state the precise nature of the alleged misrepresentations or to whom Defendants are alleged to have made the misrepresentations. Plaintiffs' vague general allegations are insufficient to create a genuine issue of material fact as to whether Defendants made misrepresentations to a government body. Further, the Supreme Court has suggested that in the "political arena," even actual misrepresentations are protected by *Noerr–Pennington. See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512–13, 92 S.Ct. 609, 612–13, 30 L.Ed.2d 642 (1972).[4]

More significantly, Plaintiffs' belated misrepresentation allegations all go to the question of Defendants' *subjective* motivation for their activities in opposition to Plaintiffs' application for necessary rezoning and permits. *Columbia Pictures* makes it abundantly clear that unless petitioning activity is objectively baseless, a court may not consider whether that activity was undertaken to achieve collateral injuries or to harass the petitioner's opponents or with other improper motive. *Columbia Pictures,* —— U.S. at ——, 113 S.Ct. at 1931. Because Plaintiffs have failed to make a threshold showing that Defendants' petitioning activities were objectively baseless, those activities are entitled to *Noerr–Pennington* protection.

Plaintiffs also contend they have not had sufficient time to conduct discovery and request, pursuant to Fed.R.Civ.P. 56(f), that Defendants' motion be denied pending additional discovery. A party moving for relief under Rule 56(f) must state in its supporting affidavit how additional discovery will enable

tended to influence executive and legislative bodies, like that at issue in the present suit.

4. The Court finds the underlying proceedings in this matter were more legislative and "political" than judicial in character. As noted, the Su-

preme Court has suggested that in the "political arena," even actual misrepresentations are protected. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 512–13, 92 S.Ct. 609, 612–13, 30 L.Ed.2d 642 (1972).

it to demonstrate the existence of a genuine issue of material fact. Rule 56(f); *Jones v. City and County of Denver,* 854 F.2d 1206, 1211 (10th Cir.1988) and cases cited therein. Here, neither Plaintiffs' supporting affidavit nor its arguments in its memorandum and at oral argument describe how additional discovery might allow them to demonstrate Defendants' petitioning activities were objectively baseless. Accordingly, Plaintiffs have not shown additional discovery might generate a genuine issue with respect to Defendants' *Noerr–Pennington* immunity to this suit. Because Defendants have failed to allege that additional discovery would enable them to survive summary judgment on the dispositive issue in this matter, the Court denies their Rule 56(f) motion.

Defendants have demonstrated there is no genuine issue of material fact with respect to the *Noerr–Pennington* bar to this suit and that Defendants are entitled to judgment as a matter of law. Therefore, the Court grants Defendants' motion for summary judgment.

Accordingly, IT IS HEREBY **ORDERED THAT:**

Defendants' motion for summary judgment (Clerk Doc. No. 15) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**