Kenneth **KELLAR**, et al., Appellants,

v.

John E. **VonHOLTUM**, et al., Grand Marais State Bank, VH Bancorporation, Inc., Respondents.

No. C3–97–132.

Court of Appeals of Minnesota.

Aug. 26, 1997.

Review Denied Oct. 31, 1997.

in a secure facility, the offense level does not limit the available dispositions. *See* Minn.Stat. § 260.185, subd. 1c(1).

Richard A. Saliterman, Thomas J. Seymour, Saliterman & Siefferman, Minneapolis, for appellants.

Gregory Bien, Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., Topeka, KS, Michael Berens, Kelly & Berens, P.A., Minneapolis, for respondents VonHoltum, et al.

Thomas R. Thibodeau, Jerome D. Feriancek, Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for respondents Grand Marais State Bank and VH Bancorporation.

Considered and decided by PARKER, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

Appellants challenge the district court's dismissal of their restraint of trade, unfair competition, defamation, abuse of process, and malicious prosecution claims against respondents. We affirm.

## FACTS

Four applicants, including appellant Kenneth Kellar, filed with the Minnesota Department of Commerce (the department) an application in the name of Cook County State Bank for a bank charter to open a bank in Grand Marais, Minnesota. Applicants for bank charters must publish notice of the filing of applications in a local newspaper and must mail notice of filing, by certified mail, to every bank located within three miles of the proposed location of the bank. Minn.Stat. § 46.041, subd. 2 (1996). The applicants complied with this law. After receiving notification that appellant had filed an application for a bank charter, respondent Grand Marais State Bank requested that the department hold a hearing on the application. See Minn.Stat. § 46.041, subd. 3 (1996) (any person may submit a request for a Commerce Department hearing on bank charter application). In addition to respondent's request for a hearing, over 35 residents of the Grand Marais community wrote letters to the department commenting on the bank charter application.

The department ordered a hearing on the bank charter application. After the hearing, the department granted the charter, but expressed concern about a number of issues: Kellar's failure to report his true level of education, a troubling loan made by Kellar to one of his partnerships, and the lack of banking expertise of a proposed bank employee.

Kellar and appellant Security State Agency of Aitkin, Inc., subsequently brought suit against respondents John VonHoltum, Michael LaVigne, Grand Marais State Bank, and VH Bancorporation, Inc.,[1] alleging: (1) defamation incident to or within the administrative hearing; (2) defamation outside the administrative hearing; (3) unfair competition; (4) restraint of trade; and (5) abuse of process/malicious prosecution.

Respondents filed a motion for judgment on the pleadings. While this motion was pending, they filed a motion for protection, prohibiting appellants from inquiring into matters that were privileged, protected, or irrelevant. The district court granted respondents' motion for protection and stayed discovery until after the court's determination of respondents' motion for judgment on the pleadings. Subsequently, the district court awarded judgment on the pleadings on appellants' unfair competition and restraint of trade claims and ordered appellants to submit complete responses to two of respondents' interrogatories within 30 days. One interrogatory requested that appellants identify and provide a summary of testimony of individuals who might have information regarding the subject matter of appellants' complaint. The other interrogatory requested that appellants identify the defamatory statements that formed the basis of their defamation claim.

In response to this order, appellants submitted amended interrogatory answers. These answers, however, failed to identify the defamatory statements that formed the basis of their defamation claim. After expiration of the 30–day period, respondents moved for a protective order and for sanctions due to appellants' failure to comply with the district court's discovery order. The district court then issued an order giving appellants 30 days to identify actionable defamatory statements and stated that failure to comply with this order would result in dismissal of the defamation action. After 30 days, the district court dismissed appellants' defamation claims as a discovery sanction, stating that the statements claimed by appellants to be defamatory were, as a matter of law, not defamatory.

---

1. LaVigne is the president and a member of the board of directors of Grand Marais State Bank. VonHoltum is the chairman of the board of Grand Marais State Bank and the chairman of the board of VH Bancorporation, Inc., which is the holding company for Grand Marais State Bank.

Thereafter, respondents moved for summary judgment on the remaining abuse of process claim; the court granted the motion.

## ISSUES

1. Did the district court err by ordering judgment on the pleadings on appellants' unfair competition claims?

2. Did the district court err by dismissing appellants' defamation claims?

3. Did the district court err by granting summary judgment on appellants' abuse of process claim?

## ANALYSIS

### 1. Unfair competition

The elements of a common law unfair competition claim based on interference with prospective contractual relations are set forth in Restatement (Second) of Torts § 766B (1979).

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relations, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

*Id.*, quoted in *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 633 (Minn.1982). Alternatively, a plaintiff may plead a statutory unfair competition claim alleging that in the course of business a person has disparaged the "goods, services or business of another by false or misleading representation of fact." Minn.Stat. § 325D.44, subd 1(8) (1996).

 The only question on review of a judgment on the pleadings is whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980). If questions of fact exist, the court should not order judgment on the pleadings. *See State ex rel. Minneapolis v. Minneapolis St. Ry.,*

238 Minn. 218, 225–26, 56 N.W.2d 564, 568 (1952); *Ryan v. Lodermeier,* 387 N.W.2d 652, 653 (Minn.App.1986) (judgment on pleadings should be granted only if pleadings create no fact issue).

 The district court, in granting judgment on the pleadings on appellants' unfair competition claims, concluded that appellants failed to state a cause of action for either common law or statutory unfair competition. Even if we were to conclude that the allegations set forth in appellants' complaint are sufficient to state either a common law or statutory cause of action for unfair competition and that the district court erred in dismissing appellants' unfair competition claims on the pleadings, dismissal of these claims was not prejudicial. The underlying premise of these claims was preserved in appellants' defamation claim, which survived judgment on the pleadings. The district court's dismissal of the unfair competition claims on the pleadings constituted, at most, harmless error because it is clear from the record that these claims would have properly been dismissed on summary judgment. *See* Minn. R. Civ. P. 61 (harmless error to be ignored).

### 2. Discovery issues

 Appellants argue that the district court erred by restricting their ability to conduct necessary discovery on their defamation claims and that these claims were improperly dismissed as a discovery sanction. Appellants specifically challenge the district court's restrictions on deposing the attorneys and investigators that respondents hired to contest appellants' application for a bank charter.

 "[T]he trial judge has wide discretion to issue discovery orders and, absent clear abuse of that discretion, normally its order with respect thereto will not be disturbed." *Shetka v. Kueppers, Kueppers, Von Feldt & Salmen,* 454 N.W.2d 916, 921 (Minn.1990). We find no abuse of the district court's broad discretion here.

Although the district court suspended appellants' ability to depose these individuals on more than one occasion during the discovery process, appellants did, in fact, have a

limited opportunity to depose them. The district court's initial order suspended discovery until the district court decided respondents' motion for judgment on the pleadings. After the district court issued its decision on that motion, appellants again had an opportunity to depose respondents' investigators. The record does not indicate that appellants sought to conduct these depositions during this period. Moreover, in dismissing the defamation claims as a discovery sanction, the district court stated that appellants had failed to come forward with any evidence supporting their allegations and observed:

> [w]hile [appellants] make much of the restrictions the Court has placed upon discovery * * *, the record discloses otherwise. Extensive numbers of individuals have been interviewed as to what representations were made to them by [respondents] or agents or others on behalf of [respondents]. None of those statements have disclosed actionable statements as the Court understands them and as the Court understands the law of defamation. There is no evidence of record suggesting that there would be other persons out there who would indicate anything differently.

We conclude that the district court did not abuse its discretion in limiting appellants' discovery.

## 3. Defamation

■ The district court dismissed appellants' defamation claims ostensibly as a discovery sanction. It appears, however, from the memorandum accompanying the dismissal that the district court determined, as a matter of law, that the evidence presented did not establish a defamation claim. Thus, it appears that the district court in effect awarded summary judgment on the defamation claims. Labeling its dismissal of appellants' claim as a discovery sanction may have been erroneous. This court has held, however, that a district court

> has the inherent authority * * * to grant summary judgment sua sponte without notice to either party where there remains no genuine issue of material fact, one of the parties deserves judgment as a matter of law, and the absence of a formal motion

creates no prejudice to the party against whom summary judgment is entered.

*Modern Heating and Air Conditioning, Inc. v. Loop Belden Porter,* 493 N.W.2d 296, 299 (Minn.App.1992) (citing *Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 280–81, 230 N.W.2d 588, 591–92 (1975)). We will review the dismissal of appellants' defamation claim under the summary judgment standard. On appeal from a summary judgment, this court determines whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992).

■ To establish a common law defamation claim, a plaintiff must show a statement, communicated by the defendant to someone other than the plaintiff, that was false and harmed the plaintiff's reputation. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 255 (Minn.1980). The question of whether a claimed defamatory meaning is reasonably conveyed by the language used is a question of law to be determined by the court. *Utecht v. Shopko Dep't Store,* 324 N.W.2d 652, 653 (Minn.1982).

■ The district court determined that a letter sent by Michael LaVigne to Grand Marais State Bank customers was the only statement that appellants clearly identified as a basis of their claim of defamation occurring outside of the administrative hearing. The district court concluded that, as a matter of law, this letter was not defamatory because it did not reflect on appellants' character or competence. We agree. The letter merely indicates that the state will review appellants' bank charter application in order to determine whether the community "needs another bank and whether it would be safely managed." We conclude that this statement is incapable of a defamatory interpretation, and the district court properly dismissed appellants' claim for defamation outside of the administrative hearing.

■ The district court also dismissed appellants' claim for defamatory statements made during and incident to the administrative proceedings, concluding that an absolute privilege applied to respondents' submissions

to the department and to testimony in the contested case proceeding. Appellants, however, contend that the district court should have applied a qualified privilege, rather than an absolute privilege, to these statements. We find no merit in appellants' position on this issue and conclude that the district court properly applied an absolute privilege to the communications incident to and during the administrative hearing.

A statement is absolutely privileged if it is published in the course of a judicial proceeding and is relevant to the proceedings. *See Matthis v. Kennedy,* 243 Minn. 219, 227–28, 67 N.W.2d 413, 419 (1954). This absolute privilege has been extended to statements made in quasi-judicial proceedings. *See Bauer v. State,* 511 N.W.2d 447, 450 (Minn.1994); *Jenson v. Olson,* 273 Minn. 390, 392–93, 141 N.W.2d 488, 490 (1966). The immunity afforded by the privilege is absolute and applies even if the defamatory statements are known to be false and are made with malice. *Johnson v. Dirkswager,* 315 N.W.2d 215, 220 (Minn.1982). The statements appellants challenge were made within, or incident to, the hearing held by the department to determine whether a bank charter should be issued. Therefore, the statements are protected by an absolute privilege.

## 4. Abuse of process

Appellants also contend that the district court erred by granting summary judgment on their abuse of process and malicious prosecution claims. We conclude there was no error.[2] The essential elements for a cause of action for abuse of process are the existence of an ulterior purpose and the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether such result might otherwise be lawfully obtained or not. *Hoppe v. Klapperich,* 224 Minn. 224, 231, 28 N.W.2d 780, 786 (1947). Similarly, to state a claim for malicious prosecution a plaintiff

must demonstrate that: (1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of the defendant. *Jordan v. Lamb,* 392 N.W.2d 607, 609 (Minn.App.1986) (citing *First Nat'l Bank v. Marquette Nat'l Bank,* 482 F.Supp. 514, 522–23 (D.Minn.1979)), *review denied* (Minn. Oct. 29, 1986).

Appellants' abuse of process and malicious prosecution claims both stem from respondents' request to the department for a hearing on appellants' application for a bank charter. Here, the statute requires that applicants notify all existing banks within three miles of the application for a bank charter. Minn.Stat. § 46.041, subd. 2. The statute provides that any person may request a hearing on an application for a bank charter and contains no probable cause requirement to request a hearing. The statute also provides that "any person may submit to the commissioner either or both written comments on an application and a written request for a hearing on the application." Minn.Stat. § 46.041, subd. 3. The actions taken by respondents were actions specifically authorized by the statute. Respondents' exercise of a statutorily given right cannot, we believe, form the basis for liability in a tort action.

## 5. *Noerr–Pennington* doctrine

The district court also held that appellants' abuse of process and malicious prosecution claims were barred by the *Noerr–Pennington* doctrine. *See United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Pres. Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Generally, the *Noerr–Pennington* doctrine protects a citizen's First Amendment right to "petition the Government for redress of grievances," by immunizing individuals from liability for injuries allegedly caused by their petitioning of the govern-

---

2. Appellants also argue that the district court improperly granted summary judgment without giving them an opportunity to respond to the summary judgment motion. As previously noted, this court has held that summary judgment

may be sua sponte. *Modern Heating,* 493 N.W.2d at 299. Therefore, we conclude that the district court did not err by failing to conduct a summary judgment hearing.

ment or participating in public processes in order to influence governmental decisions. *See Noerr,* 365 U.S. at 138, 81 S.Ct. at 530 ("right of petition" is protected by Bill of Rights); *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972) (stating that doctrine applies to institution of suits before administrative agencies and courts because "the right to petition extends to all departments of the Government"). The doctrine provides that private individuals' efforts to induce government action in their own self-interest cannot be the basis of liability even if their conduct is motivated by an anticompetitive purpose or injures a competitor. *Noerr,* 365 U.S. at 135–38, 81 S.Ct. at 528–30. Under the doctrine, parties are generally immune from liability for filing suits "to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors." *Surgidev Corp. v. Eye Technology, Inc.,* 625 F.Supp. 800, 804 (D.Minn.1986) (quoting *First American Title Co. v. South Dakota Land Title Ass'n,* 714 F.2d 1439, 1447 (8th Cir.1983)).

 Whether the *Noerr–Pennington* doctrine bars appellants' tort claims against respondents is a question of first impression in Minnesota. Appellants argue that the *Noerr–Pennington* doctrine is an antitrust doctrine that has no applicability in the context of this case. In support of their assertion, appellants quote *Professional Real Estate Investors, Inc. v. Columbia Pictures,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), stating that under this doctrine "[t]hose who petition government for redress are generally immune from *antitrust liability.*" *Id.* at 56, 113 S.Ct. at 1926 (emphasis added). However, although the Court recognized in *Professional Real Estate Investors* that the doctrine arose in the area of antitrust liability, the Court also stated:

> [w]hether applying *Noerr* as an antitrust doctrine *or invoking it in other contexts,* we have repeatedly reaffirmed that evidence of anti-competitive intent or purpose alone cannot transform otherwise legitimate activity into a sham.

*Id.* at 59, 113 S.Ct. at 1927 (citing *FTC v. Superior Court Trial Lawyers Assn.,* 493 U.S. 411, 424, 110 S.Ct. 768, 775, 107 L.Ed.2d

851 (1990) (emphasis added); *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913–14, 102 S.Ct. 3409, 3425–26, 73 L.Ed.2d 1215 (1982)); *see also Fischer Sand & Aggregate v. City of Lakeville,* 874 F.Supp. 957, 959 (D.Minn.1994) (noting that "[a]lthough *Noerr–Pennington* doctrine arose in the antitrust context, lower court cases have established that it applies in other areas of substantive law, including tortious interference with contractual and prospective business relations and Section 1983 claims"). Thus, we reject appellants' argument that the *Noerr–Pennington* doctrine applies only in the context of antitrust litigation.

The *Noerr–Pennington* doctrine could be invoked to support our decision in this case. There is obvious harmony between that doctrine and the district court's rationale for dismissal. The doctrine may, indeed, reflect sound public policy. Resolution of the issues here presented, however, does not require that we announce adoption of the *Noerr–Pennington* doctrine by Minnesota courts. *See Fabio v. Bellomo,* 489 N.W.2d 241, 245 (Minn.App.1992) (as an error-correcting court this court is reluctant to adopt new theories of law), *aff'd,* 504 N.W.2d 758 (Minn. 1993). The district court's dismissal of all of appellants' claims can be affirmed on other bases, whether we exercise a narrow abuse of discretion standard of review (dismissal based on discovery violations) or whether we review de novo what was, in effect, the district court's award of summary judgment (for failure to present a material fact issue).

### DECISION

We affirm the district court's dismissal of appellants' claims. Error, if any, in the district court's dismissal of appellants' unfair competition claims on the pleadings was harmless, because the crux of these claims was preserved in appellants' defamation claims. The district court properly granted summary judgment, in effect, on appellants' defamation, abuse of process, and malicious prosecution claims.

**Affirmed.**