# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1015
_____

United States of America

*Plaintiff - Appellant*

v.

Raymond Demilia; Jerome Derrick

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 10, 2014
Filed: October 29, 2014

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Raymond Demilia and Jerome Derrick were each indicted on one count of knowingly and intentionally possessing with intent to distribute marijuana in violation of 21 U.S.C. § 841. The district court granted Demilia and Derrick's motions to suppress evidence seized during a search of a vehicle. The government appeals. We reverse and remand for further proceedings.

## I. Background

On July 17, 2012, officer Victor Coleman of the Arkansas State Police was working highway patrol on Interstate 40 when he saw a recreational vehicle (RV) go off the right side of the road and cross over the fog line and onto the shoulder. Coleman heard the tires hit the "rumble strip" when the RV crossed over the line. Coleman testified that he then saw the RV cross over the fog line a second time. After following the RV for a few miles, he turned on the blue lights in his patrol car, which activated the patrol car's camera. Coleman testified that after he activated his blue lights, the RV crossed the fog line a third time. When the driver of the RV did not respond to the blue lights, Coleman moved toward the left lane and activated his siren. The RV then pulled over to the right shoulder of the highway.

Demilia was driving the RV, and Derrick was a passenger in the front seat. Coleman requested Demilia's license, registration, and insurance information. Coleman then asked Demilia to come to the police vehicle, where he was questioned about the purpose of his trip. In response to questioning, Demilia indicated that he owned the motor home and that he was coming from Colorado. After noting that Demilia seemed anxious and nervous, Coleman asked him whether there was anything illegal in the vehicle, to which Demilia responded that there was not. Coleman then twice asked if he could check or look at the vehicle to make sure everything was okay. Demilia replied "yes" the second time Coleman asked the question. Coleman searched the RV and found more than 759 kilograms—or approximately 1600 pounds—of marijuana.

Following their indictment, Demilia and Derrick moved to suppress the evidence seized during the search of their vehicle. In its responses to the motions to suppress, the government stated that Coleman conducted the traffic stop because "on two . . . occasions" the RV drove over the white line and onto the highway shoulder, "in violation of Arkansas Code Annotated, Section 27-51-302 and/or Section 27-68-103."

During direct examination at the suppression hearing held on Friday, November 1, 2013, Coleman testified that the basis for the traffic stop was a violation of Section 27-68-103 ("Section 103"). Subsequently, Coleman was cross-examined regarding Section 103 but was not cross-examined regarding Section 27-51-302 ("Section 302"). On redirect, the government asked the district court to take judicial notice of Section 302. The government told the district court that it was "not going to say that Mr. Demilia violated" that provision and that there was no contention that Demilia violated Section 302 when he drove over the fog line. The district court stated that it was taking judicial notice of Section 302 "[w]ith that understanding[.]"

On Monday, November 4, the government filed a "Motion to Supplement the Record" that stated as follows:

> During an exchange with the Court, the United States mistakenly stated that it was not asserting Section 27-51-302 as the basis for the traffic stop in this case. As stated in the United States original Response, the traffic stop was a violation of Arkansas Code Annotated, Section 27-51-302 and/or Section 27-68-103.

The motion included citations to Eighth Circuit cases that have upheld Section 302 as a proper basis for a traffic stop when an officer observes a vehicle crossing over the fog line. Demilia and Derrick objected to the motion to supplement, characterizing it as akin to an attempt to reopen the suppression hearing. They argued that the government gave no reasonable excuse for its mistake and that granting the motion would result in prejudice to them.

The district court granted the motions to suppress, concluding that Section 103 could not provide an objectively reasonable basis for the traffic stop.[1] The district

---

[1] The district court found that Section 103 could not support the traffic stop despite Eighth Circuit precedent establishing that objectively reasonable mistakes of law can justify a traffic stop for Fourth Amendment purposes. In light of our reversal on other grounds, we need not review this portion of the district court's order. We

court determined that, although the known facts arguably appeared to provide probable cause that a traffic violation under Section 302 had occurred, counsel for the government had abandoned or waived the Section 302 argument. The district court further concluded that the government could not rely on Section 302 to justify the traffic stop because Coleman had affirmatively testified at the suppression hearing that he had made the stop based on Section 103. The district court held that the evidence seized during the search of the RV was fruit of the poisonous tree and that it thus must be suppressed.

## II. Discussion

We review a district court's denial of a motion to suppress *de novo,* but we review the district court's underlying factual determinations for clear error. United States v. Hayden, 759 F.3d 842, 846 (8th Cir. 2014).

"A traffic stop is considered a seizure for Fourth Amendment purposes." United States v. Guevara, 731 F.3d 824, 828 (8th Cir. 2013). Generally, the decision to stop an automobile does not violate the Fourth Amendment as long as the officer has probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the . . . officer at the time . . . ." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

In Devenpeck v. Alford, the Supreme Court examined probable cause in the context of an arrest and held that even if an officer invokes the wrong offense at the time of an arrest, probable cause for the arrest still exists as long as the facts known

---

note, however, that the Supreme Court has taken under consideration the question whether, under the Fourth Amendment, an officer's mistake of law can support a traffic stop. See Heien v. North Carolina, 134 S. Ct. 1872 (2014).

to the officer would provide probable cause to arrest for the violation of some other law. See id. at 153-56. The Court held that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id. at 153. In other words, an "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Id. The same principle applies to a traffic stop. Applying Devenpeck in United States v. Guevara, we held that a state trooper has probable cause to make a traffic stop even if he does not cite to the proper statute or use the precise language of the relevant statute at the time he makes the stop. 731 F.3d at 828-29.

The district court concluded that the rationale of Guevara did not control in this case. The district court first noted that the government and Coleman affirmatively relied on Section 103, rather than Section 302, as the basis for the traffic stop, whereas in Guevara the arresting officer did not testify that a specific statute was the basis for the stop. We disagree that Coleman lacked probable cause merely because he relied on the wrong statute. The Supreme Court has repeatedly held that an officer's state of mind or subjective motivation is irrelevant to the probable-cause analysis. See Devenpeck, 543 U.S. at 153-55; Whren, 517 U.S. at 812. "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." Whren, 517 U.S. at 814. The district court suggested that Coleman's affirmative reliance on the wrong statute during the suppression hearing makes this case distinguishable from Guevara. But an officer's subjective motivation—whether revealed at the time of the traffic stop or at the time of a suppression hearing—is irrelevant to the probable-cause inquiry. Even though Coleman testified that Section 103 was the subjective basis for the traffic stop, Section 302 could still provide the objective legal justification needed to support probable cause for the stop.

The district court next reasoned that Guevara did not apply because the government had waived or abandoned its Section 302 argument. The government contends that it did not waive its right to argue that Section 302 provided a valid basis

for the traffic stop for Fourth Amendment purposes. We agree that, on the record before us, there was no waiver.

As a threshold matter, Demilia and Derrick suggest that the applicable standard of review is abuse of discretion and that the key factors we should consider are (1) the prejudice to them resulting from the government's misstatement at the hearing and (2) the government's lack of an adequate explanation for its mistake. These are similar to the factors we would consider in reviewing an order on a motion to reopen. See United States v. Chavez Loya, 528 F.3d 546, 555 (8th Cir. 2008) (reviewing a motion to reopen under the abuse-of-discretion standard); see also United States v. Kithcart, 218 F.3d 213, 220 (3d Cir. 2000) (considering prejudice and a reasonable and adequate explanation as key factors). Although a motion to supplement the record after a suppression hearing could, in certain circumstances, be analogous to a motion to reopen, see Kithcart, 218 F.3d at 219, here the government did not seek to inject new facts, evidence, or arguments into the record, but instead sought to reassert a legal argument it had already made in its pre-hearing briefs. In addition, the district court specifically held that counsel for the government had abandoned or waived the Section 302 argument. We therefore review the ruling of the court below as a ruling on the issue of waiver rather than a ruling on a motion to reopen.

Under our waiver jurisprudence, a right—such as the right to have recourse to a legal rule or argument—is waived when it is "intentionally relinquished or abandoned." See United States v. McCoy, 496 F.3d 853, 856 (8th Cir. 2007). The analogous doctrine of forfeiture applies when a party fails to timely assert a right. See United States v. Olano, 507 U.S. 725, 733 (1993). Forfeited claims are still subject to plain-error appellate review, whereas those that are waived are extinguished and are unreviewable on appeal. United States v. Wisecarver, 598 F.3d 982, 988 (8th Cir. 2010).

Because the government asserted Section 302 as a basis for the traffic stop in its initial briefs in opposition to the motions to suppress, the Section 302 argument could not have been more timely asserted. The question, then, is whether the government "intentionally relinquished or abandoned"—or waived—its right to assert Section 302 as a basis for the traffic stop when it stated at the hearing that it was not contending that Demilia violated Section 302 when he drove over the fog line. The government's briefs in response to the motions to suppress asserted Section 302 as a basis for the traffic stop. Furthermore, the next business day after the suppression hearing, the government filed a motion to supplement the record, explaining that it had made a mistake and reasserting its Section 302 argument. In these circumstances, the government's misstatement at the hearing, when viewed in context, is not sufficient to support the conclusion that it "intentionally relinquished or abandoned" its right to resort to Section 302 as a basis for the stop. Cf. Fed. Express v. Tenn. Pub. Serv. Comm'n, 925 F.2d 962, 966-67 (6th Cir. 1991) (holding that a party did not waive an issue when the party conceded it at a hearing, but then subsequently retracted the concession in its supplemental brief).

Demilia and Derrick argue that they would be unfairly prejudiced if the government is allowed to reassert its Section 302 legal theory at this stage. In particular, they argue that the government's express disavowal of reliance on Section 302 prevented them from fully developing the record and cross-examining Coleman regarding factors relevant to establishing the validity of the traffic stop under Section 302. It is true that when the government fails to raise a legal argument before the district court, the appellate court may be foreclosed from considering it if, by failing to raise it, the government has unfairly deprived the accused of an adequate opportunity to respond. See Giordenello v. United States, 357 U.S. 480, 487-88 (1958) (refusing, in reviewing a motion to suppress, to permit the government to assert a new legal theory when the accused had not had an opportunity to cross-examine the arresting officer to rebut the government's new contention). In most cases in which the government was precluded from asserting a Fourth Amendment

-7-

argument on appeal, however, the government was attempting to assert the argument for the first time on appeal, see United States v. Lucas, 499 F.3d 769, 785 (8th Cir. 2007) (Bye, J., concurring in part, dissenting in part, and concurring in the judgment) (listing cases), or the government had raised the argument for the first time following the suppression hearing, see, e.g., United States v. Thompson, 710 F.2d 1500, 1504 (11th Cir. 1983) (noting that the government had not advanced its "reasonable suspicion" argument until more than five months after the suppression hearing). The logic of those cases does not apply where, as here, the government has timely asserted its argument to the district court in its pre-hearing briefs.[2]

We conclude that the government did not waive its Section 302 argument. If Demilia and Derrick can show that they actually suffered prejudice as a result of the government's misstatement at the hearing and that the misstatement prevented them from fully responding to the government's Section 302 argument, then on remand they may file a motion to reopen the suppression hearing or supplement the record with additional arguments or evidence, if any additional material evidence exists, to rebut the government's Section 302 theory. See Chavez Loya, 528 F.3d at 555 (suggesting that on a motion to reopen, the movant should demonstrate that there is new evidence or that there are new arguments that could materially affect the outcome and should proffer a good reason for previously failing to present them).

---

[2]We also note that since Coleman's subjective motivations for the traffic stop are irrelevant to the probable-cause inquiry, the government had no need to have Coleman testify about Section 302 during the hearing, and in any event Demilia and Derrick were free to cross-examine him regarding all factors that they thought pertinent.

## III. Conclusion

The order suppressing the evidence is reversed, and the case is remanded to the district court for further proceedings consistent with the views set forth in this opinion.

_____