# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1726

_____

Mason Murphy

*Plaintiff - Appellant*

v.

Michael Schmitt, Officer, in his individual capacity

*Defendant - Appellee*

Jerry Pedigo, Corporal, in his individual capacity and in his official capacity;
Camden County, Missouri

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: November 27, 2024
Filed: July 9, 2025

_____

Before KELLY,[1] GRASZ, and KOBES, Circuit Judges.

_____

---

[1]Judge Melloy took inactive senior status on October 4, 2024. Judge Kelly was designated to replace Judge Melloy on the panel pursuant to Eighth Circuit Rule 47E.

GRASZ, Circuit Judge.

Mason Murphy alleges Officer Michael Schmitt wrongly arrested him for engaging in protected speech under the pretext of walking on the wrong side of the road. The district court granted Officer Schmitt's motion to dismiss Murphy's claims based on qualified immunity. This court originally affirmed, but the Supreme Court vacated the judgment and remanded for reconsideration in light of its intervening decision in *Gonzalez v. Trevino*, 144 S. Ct. 1663 (2024). This time, we conclude Murphy plausibly alleges Officer Schmitt arrested him in retaliation for exercising his First Amendment rights and Officer Schmitt has failed to show he is entitled to qualified immunity based on the complaint. We therefore reverse the dismissal of that claim and remand for further proceedings.

## I. Background

In May 2021, Murphy was walking on the right shoulder of a highway in Camden County, Missouri, when Sunrise Beach Police Officer Schmitt stopped him. Murphy was walking with traffic, rather than facing traffic, which generally violates Missouri law. *See* Mo. Rev. Stat. § 300.405. Officer Schmitt approached Murphy and demanded that he identify himself. Murphy refused to identify himself and asked why he was being detained. After nine minutes of argument between Murphy and Officer Schmitt, Officer Schmitt handcuffed Murphy and placed him in the patrol car. Officer Schmitt then drove Murphy to the sheriff's department and informed Murphy he was being arrested for "failure to identify." Later, on the police radio, Officer Schmitt claimed Murphy was stumbling and walking on the wrong side of the road. Murphy alleges he was not stumbling or intoxicated and that Officer Schmitt admitted he did not smell any alcohol on Murphy. After arriving at the jail, Officer Schmitt made a phone call in which he referred to Murphy as a "dip shit" who "would not identify himself" and "ran his mouth off." During the same call, Officer Schmitt asked "What can I charge him with?" Murphy was placed in a cell where he remained for two hours. He was never charged with any offense in connection with this incident.

Murphy then filed this lawsuit under 42 U.S.C. § 1983 against Officer Schmitt for false arrest and First Amendment retaliation.[2] Officer Schmitt sought dismissal of these claims based on qualified immunity. The district court granted the motion, concluding Officer Schmitt had probable cause to arrest Murphy because he was walking on the wrong side of the road and refused to identify after he was stopped. Murphy appealed the dismissal of his First Amendment retaliation claim. A divided panel of this court affirmed the dismissal, *Murphy v. Schmitt*, No. 22-1726, 2023 WL 5748752 (8th Cir. Sept. 6, 2023), but the Supreme Court vacated that judgment and remanded for reconsideration in light of its intervening decision in *Gonzalez v. Trevino*, 144 S. Ct. 1663 (2024). *See Murphy v. Schmitt*, 145 S. Ct. 122 (2024).

## II. Analysis

Murphy argues the district court erred by dismissing his retaliatory arrest claim based on qualified immunity. We review de novo the grant of a motion to dismiss for failure to state a claim, accepting the well-pled allegations of the complaint as true and granting all reasonable inferences in favor of the nonmoving party. *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953 (8th Cir. 2023). A defendant "seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that [he is] entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). A government official is entitled to qualified immunity unless (1) the facts alleged by the plaintiff establish the violation of a constitutional right; and (2) the right was clearly established at the time of the official's alleged misconduct. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).

---

[2]Murphy also sued a Camden County officer and Camden County, but he voluntarily dismissed his claims against those parties.

To state a claim for First Amendment retaliatory arrest, a plaintiff must generally allege four elements: (1) he engaged in a protected activity; (2) the defendant took an adverse action against him that would chill a person of ordinary firmness from continuing the activity; (3) his protected activity motivated, at least in part, the defendant to take the adverse action; and (4) the defendant lacked actual or arguable probable cause to arrest him. *Id.* at 891. Murphy plausibly alleges the first three elements, but he concedes that Officer Schmitt had probable cause that Murphy violated Missouri Revised Statute § 300.405. Thus, this appeal turns on the "narrow exception" to the fourth element: "[t]he existence of probable cause does not defeat a plaintiff's claim if he produces 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *See Gonzalez*, 144 S. Ct. at 1665–66 (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019)).

Taken as a whole, Murphy's complaint plausibly alleges that objective evidence exists that Sunrise Beach officers typically exercise their discretion not to arrest individuals for walking on the wrong side of the road when those individuals do not argue with officers or otherwise protest police conduct. Murphy's complaint claims that people routinely walk on the wrong side of the road but "discovery will show that no one else in recent memory has been detained or arrested by any law enforcement officers in Sunrise Beach or Camden County" for doing so. Murphy's complaint further alleges Officer Schmitt and other Camden County officers struggled to identify a basis for the arrest despite Murphy's repeated requests for an explanation, with Officer Schmitt asking another individual upon arrival at the jail, "What can I charge him with?" While these statements by the officers are not in themselves objective evidence, they tend to bolster Murphy's other allegations that officers rarely, if ever, arrest people for walking on the wrong side of the road but did so here based on his speech.[3] Given that this case is at the pleading stage and

---

[3]Contrary to the dissent's claim, we do not suggest that these alleged statements satisfy *Nieves*'s objective evidence requirement. Rather, the statements make Murphy's allegations that objective evidence exists more plausible: if Sunrise Beach officers arrest people for walking on the wrong side of the road, they likely

the information related to a lack of arrest records is within the possession and control of the defendant, we can plausibly infer from these allegations that the narrow exception to the fourth element applies here.[4] *See Ahern Rentals, Inc.*, 59 F.4th at 954. To hold otherwise would largely nullify the *Nieves* exception by requiring plaintiffs to put forth evidence of selective enforcement before they have a fair opportunity to obtain it. As this court has recognized in the context of other remedial statutes, "[i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by [the statute] will suffer." *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009).

It was clearly established at the time Officer Schmitt arrested Murphy that Murphy had a right to be free from retaliation based on his speech criticizing the officer's actions. *See Thurairajah v. City of Fort Smith*, 925 F.3d 979, 985 (8th Cir. 2019). Moreover, *Nieves* (discussing a jaywalking hypothetical) placed Officer Schmitt on notice that probable cause for a pedestrian violation did not excuse a retaliatory arrest when other people who did not engage in protected activity are not arrested for the same violation. *See Nieves*, 139 S. Ct. at 1727.

But that does not end our inquiry because the district court also concluded Officer Schmitt had probable cause to arrest Murphy for failing to identify and that it was not clearly established that an arrest for refusing to identify was

---

would not struggle to identify it as an arrestable offense. In other words, we conclude these alleged statements suggest that Murphy will be able to obtain objective evidence to support his claim in discovery even though the statements themselves cannot serve as the objective evidence required to survive summary judgment.

[4]We take no position on whether such allegations suffice in other circumstances, particularly if the offense at issue is more serious than a minor pedestrian traffic violation. *See Nieves*, 139 S. Ct. at 1727; *Gonzalez*, 144 S. Ct. at 1667. The plausibility of a plaintiff's allegations for the *Nieves* exception depends on the context.

impermissible. We disagree on both counts. "[A]n officer may ask a suspect to identify himself in the course of a *Terry* stop," as Officer Schmitt did here. *See Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 186 (2004). Nevertheless, an officer cannot arrest a suspect for failure to identify unless a state law compels an individual to identify himself upon request after a valid stop and "the request for identification [is] reasonably related to the circumstances justifying the stop." *See id.* at 187–88; *Stufflebeam v. Harris*, 521 F.3d 884, 887–89 (8th Cir. 2008). A request for identification cannot justify an arrest if it was "an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence." *Hiibel*, 542 U.S. at 189. In *Stufflebeam*, this court denied qualified immunity to an Arkansas police officer who arrested an individual who failed to identify during a traffic stop because Arkansas law did not authorize such an arrest. *See Stufflebeam*, 521 F.3d at 887–89. There, the officer claimed the arrestee obstructed a governmental function by not identifying himself because an Arkansas Rule of Criminal Procedure required a person "to furnish information or otherwise cooperate in the investigation or prevention of crime." *Id.* at 887. But the officer failed to show any provision of Arkansas law establishing that the arrestee had a legal obligation to provide his identity. *Id.* Though the officer could request the individual to identify, we reasoned the arrestee's refusal to furnish his identity could not justify the arrest in the absence of an obligation to answer. *Id.*

Officer Schmitt relies on Missouri Revised Statute § 300.080 as the source for Murphy's obligation to identify himself. This section states that "[n]o person shall knowingly fail or refuse to comply with any lawful order or direction of a police officer or fire department official." Mo. Rev. Stat. § 300.080. But Officer Schmitt fails to point to any provision of Missouri law or local ordinance establishing that officers may lawfully order a pedestrian to identify himself. *Cf. Hiibel*, 542 U.S. at 181–82 (discussing a Nevada law authorizing officers to ascertain the identity of a stopped person and requiring "[a]ny person so detained [to] identify himself"). Whether Officer Schmitt may *ask* for Murphy's identity is a separate question from whether he may *order* Murphy to provide his identity and *punish* him for withholding it. *See Stufflebeam*, 521 F.3d at 887–89. The mere existence of a statute

permitting an officer to ask for information does not authorize an arrest for failing to provide it without some legal authority behind the demand. *See id.* Based on the record before us, Officer Schmitt has failed to establish that his order to identify was one that could be lawfully required under Missouri Revised Statute § 300.080 and therefore has not shown that he had probable cause or arguable probable cause to arrest Murphy on this alternative basis.[5] Thus, at the motion to dismiss stage, Murphy has plausibly alleged a retaliatory arrest claim, and Officer Schmitt has failed to show he is entitled to qualified immunity.

## III. Conclusion

We reverse the dismissal of Murphy's retaliatory arrest claim and remand for further proceedings.

KOBES, Circuit Judge, dissenting.

*Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam) does not change my opinion that the original panel got it right, *see Murphy v. Schmitt*, No. 22-1726, 2023 WL 5748752 (8th Cir. Sept. 6, 2023) (per curiam), *vacated*, 145 S. Ct. 122 (2024). I would reinstate that opinion and affirm the district court.

Murphy's complaint doesn't get past *Iqbal*. He alleges "[a] reasonable opportunity for further investigation or discovery will show that no one else in recent memory has been detained or arrested . . . for walking on the wrong side of the road." He also claims that "[w]alking on the wrong side of the road occurs all the time on the highways with wide shoulders," and although "officers have probable cause to

---

[5]Notably, Section 300.080 falls within the subchapter of enforcement and obedience of traffic regulations and follows Section 300.075, which authorizes police officers to enforce traffic laws and direct traffic. *See* Mo. Rev. Stat. § 300.075. Thus, contextually, a "lawful order" under Section 300.080 appears to pertain to orders about directing traffic or requiring compliance with traffic laws, rather than covering any demand an officer may make to a detained person.

make arrests" they "typically exercise their discretion not to." These are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), so they do not show "a 'facial plausibility' that police commonly see violations of § 300.405 on similar roads and fail to make arrests," *Murphy*, 2023 WL 5748752, at *2 (quoting *Iqbal*, 556 U.S. at 678).

And if Murphy's allegations can't get past *Iqbal*, they certainly do not meet *Nieves*'s "objective evidence" requirement. *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019). The Court reiterated in *Gonzalez* that the *Nieves* exception is "slim" and a plaintiff must present "'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" 602 U.S. at 658, 655 (quoting *Nieves*, 587 U.S. at 407). But the majority instead expands the exception, opening the door for any plaintiff that alleges "discovery will show" a *Nieves* violation.

And instead of limiting Murphy to objective evidence, the court allows him to "bolster," *ante* at 4, his pleadings with "the statements and motivations of the particular arresting officer," *Nieves*, 587 U.S. at 407. This disregards "the only express limit [the Court] placed on the sort of evidence a plaintiff may present," *Gonzalez*, 602 U.S. at 658—subjective evidence is "'irrelevant' at this stage," *Nieves*, 587 U.S. at 407 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

I respectfully dissent.

_____